**Wendolyn A. KELLY,**
**Plaintiff–Appellant,**

**v.**

**LEE'S OLD FASHIONED HAMBURGERS, INC. (LEE'S OLD FASHIONED HAMBURGERS OF NEW ORLEANS, INC.), Defendant,**

**State Farm Fire & Casualty Company,**
**Defendant–Appellee.**

**No. 89–3133.**

United States Court of Appeals,
Fifth Circuit.

July 31, 1990.

---

Wendolyn Kelly Long, Grand Isle, La., pro se.

Michael J. Navitsky, Garner, Munoz & Navitsky, New Orleans, La., for intervenor.

James L. Harmon and Joseph R. Ward, Jr., Ward & Clesi, New Orleans, La., for defendant-appellee.

Before CLARK, GEE, GARZA, REAVLEY, POLITZ, KING, JOHNSON, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHÉ, WIENER and BARKSDALE, Circuit Judges.

PER CURIAM:

We took this case en banc to consider the following question: May a district court enter a partial final judgment under Federal Rule of Civil Procedure 54(b), without reciting that "no just reason for delay" exists for its entry.

I.

The background facts of this case are stated fully in the panel opinion. 896 F.2d 923 (5th Cir.1990). We will state only the facts important to our decision today. Kelly sued several defendants. The district court granted one defendant's motion for summary judgment and dismissed all of plaintiff's claims against that defendant, but the court did not dispose of the claims against other defendants. By minute entry, the judge directed the dismissed defendant to "prepare and submit 54(b) judgment to the Court."

The order submitted and signed was captioned "**F.R.C.P. 54(b) JUDGMENT.**" In the order, the trial court directed "that there be final judgment entered pursuant to Federal Rule of Civil Procedure 54(b)...." The order does not provide that "no just reason for delay" exists for entry of the judgment.[1]

Kelly appealed the order as a final judgment. 28 U.S.C. § 1291. The panel questioned whether the judgment qualified as a partial final judgment under Rule 54(b). The panel concluded that "no particular language need be included in the judgment so long as the order reflects an unmistakable intent by the district court to enter an appealable order under Rule 54(b)." 896 F.2d at 924. Finding the necessary indication of intent in the order itself, the panel concluded that a partial final judgment had been entered and therefore that the court had jurisdiction to consider the appeal.

II.

A.

With one exception, our Rule 54(b) cases follow a consistent path. Where neither the order appealed from nor related portions of the record reflect an intent by

---

1. Rule 54(b) provides in pertinent part:

[W]hen multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all ... parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judg-

ment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates ... the rights and liabilities of fewer than all the parties shall not terminate the action as to any ... of the parties...."

the district judge to enter a partial final judgment, we refuse to consider the order appealable as a final judgment. *See, e.g., Borne v. A & P Boat Rentals No. 4, Inc.,* 755 F.2d 1131 (5th Cir.1985); *Thompson v. Betts,* 754 F.2d 1243 (5th Cir.1985). Our decision in *Thompson v. Betts* illustrates this approach. In that case, the plaintiff appealed the dismissal of one defendant although claims were pending against a second defendant. We found "no hint in the record that the district court certified its order as a final judgment under Rule 54(b) or that the parties even sought such a ruling." *Id.* at 1245–46. We concluded that the judgment was not final and refused to consider the appeal.

Where, on the other hand, language in the order either independently or together with related parts of the record reflects the trial judge's clear intent to enter a partial final judgment under Rule 54(b), we consider the order appealable. *See Crowley Maritime Corp. v. Panama Canal Comm'n,* 849 F.2d 951, 953 (5th Cir.1988); *EEOC v. Delta Air Lines, Inc.,* 578 F.2d 115, 116 (5th Cir.1978).

In *Crowley,* the district court dismissed appellant Rolstad's intervention but did not dispose of other claims against other parties. Rolstad moved the court to amend its order "pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, to include the expression of opinion that 'the Court has made an express determination that there is no just reason for delay and that it is adjudged that the plaintiff's complaint be and the same hereby is dismissed.'" *Id.* at 953. The district court granted the motion but did not include in its order either the "no just reason for delay" language or language expressly directing the entry of judgment. Despite the district court's failure to set out this language in the order, we concluded that a proper Rule 54(b) certification had been made and entertained the appeal. We noted that although the "district court did not expressly include the magical language in any of its orders," the underlying motion "contained the necessary language and called it to the district court's attention, and the district court's

intent ... cannot be genuinely disputed." *Id.* at 953. Rejecting a "form-over-substance" approach that "would not significantly advance the purposes of Rule 54(b) and would frustrate the manifest intent of the parties and the trial court," we concluded that the trial judge had made sufficient certification to enter a partial final judgment under Rule 54(b). *Id.*

Our decision in *EEOC v. Delta Air Lines* reflects a similar approach. In the order appealed from, the district court quoted portions of Rule 54(b), "but, instead of making the rule-required determination and direction merely stated: '[a]ccordingly, the Court expressly directs the entry of final judgment....'" We concluded that "[a]lthough the order does not literally track the requirements of the rule, the district court's wording is sufficiently clear to permit us to be sure the required determination and direction was intended." *Id.* at 116.

■ We are persuaded that the standards developed in *Crowley* and *EEOC* for determining whether a district judge has entered a partial final order under Rule 54(b) are sound and workable, and we will continue to follow them. If the language in the order appealed from, either independently or together with related portions of the record referred to in the order, reflects the district court's unmistakable intent to enter a partial final judgment under Rule 54(b), nothing else is required to make the order appealable. We do not require the judge to mechanically recite the words "no just reason for delay."

■ This view of Rule 54(b) is not inconsistent with the requirement in the rule that the trial judge make an "express determination" that no just reason for delay exists. When the court recites Rule 54(b) in the order or grants a motion requesting entry of judgment under Rule 54(b), the court expressly incorporates the entire rule by reference and signals its conclusion that the requirements of the rule have been met and entry of partial final judgment is prop-

er.[2]

This practical, common sense interpretation of Rule 54(b) is consistent with Rule 1's direction that the rules be "construed to secure the just, speedy and inexpensive determination of every action." This interpretation is also compatible with the purpose of the "express determination" requirement:

> The obvious purpose of this section, as indicated by the notes of the advisory committee, is to reduce as far as possible the uncertainty and the hazard assumed by a litigant who either does or does not appeal from a judgment of the character we have here. It provides an opportunity for litigants to obtain from the District Court a clear statement of what that court is intending with reference to finality, and if such a direction is denied, the litigant can at least protect himself accordingly.

*Dickinson v. Petroleum Conv. Corp.*, 338 U.S. 507, 512, 70 S.Ct. 322, 324, 94 L.Ed. 299 (1950) (footnote omitted). *See also* J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 54.27[2.–2] (2d Ed.1988) at 114–16.

Our interpretation of Rule 54(b), has not, to our knowledge, created problems for litigants in determining when to appeal partial judgments. Counsel should know that the district court has entered a partial final judgment when the order alone or the order together with the motion or some other portion of the record referred to in the order contains clear language reflecting the court's intent to enter the judgment under Rule 54(b).

### B.

One of our cases is out of step with the approach we have developed in determining whether a partial judgment is appealable. In *Mills v. Zapata*, 722 F.2d 1170 (5th Cir.1983), the district court granted relief on an ancillary demand without disposing of all claims against all parties. Neither the order appealed from nor related pleadings in the record recited Rule 54(b). The *Mills* panel apparently inferred the district court's intent to enter a final judgment from the posture of the case and the circumstances surrounding the entry of judgment. *Mills* is contrary to the balance of our circuit authority and is therefore overruled.

### C.

■ We now apply the standard discussed above to the facts of this case. As noted above, the record contains a minute entry directing the prevailing defendant to "prepare and submit 54(b) judgment to the Court." The order appealed from is captioned "**F.R.C.P. 54(b) JUDGMENT**" and further directs "that there be final judgment entered pursuant to Federal Rule of Civil Procedure 54(b)...."

The only question, then, is whether this language reflects with unmistakable clarity the district judge's intent to enter a partial final judgment under Rule 54(b). We have no doubt that it does. In reaching this conclusion, we make the very reasonable assumption that federal district judges know the requirements of this frequently used rule. Rule 54(b) deals only with partial final judgments. Thus, when the district court directed that a 54(b) judgment be prepared, then entered judgment "pursuant to Federal Rule of Civil Procedure 54(b)," it could have meant one thing only: the requirements of Rule 54(b) were satis-

---

**2.** The close vote of the en banc court in this case demonstrates that this is obviously not the only possible interpretation of this rule. The circuits are also sharply divided on this issue. *Compare St. Paul Fire and Marine Ins. Co. v. Pepsico., Inc.,* 884 F.2d 688 (2d Cir.1989) (appeal entertained where district judge wrote "Motion granted So ordered" on the cover of a notice of the motion seeking a Rule 54(b) judgment) to *Mooney v. Frierdich,* 784 F.2d 875 (8th Cir.1986) (appeal dismissed where district judge entered "So Or-

dered" on the face of the motion to "certify its [previously entered] order ... pursuant to ... Rule 54(b)"). *Also compare Alexander v. Chicago Park Dist.,* 773 F.2d 850, 855 (7th Cir.1985) to *Frank Briscoe Co. v. Morrison–Knudsen Co.,* 776 F.2d 1414 (9th Cir.1985).

Prudence might dictate use of what some view as the talismanic words of Rule 54(b), as at least a nod to the wisdom of the adage "an ounce of prevention...."

fied and partial final judgment was appropriate.

Because the judgment appealed from was a partial final judgment under Rule 54(b), this court had jurisdiction to hear the appeal and the panel correctly entertained the merits of the appeal.

AFFIRMED.

JERRY E. SMITH, Circuit Judge, with whom, CLARK, Chief Judge, GEE, JOHNSON, JERRE S. WILLIAMS, E. GRADY JOLLY and BARKSDALE, Circuit Judges, join, dissenting.

I dissent primarily for the reasons ably expressed in Judge Williams's dissent from the panel opinion in this case. *See Kelly v. Lee's Old Fashioned Hamburgers, Inc.*, 896 F.2d 923, 925–27 (5th Cir.1990) (Williams, J., dissenting in part and concurring in part).[1] In its surprising and perplexing opinion, the en banc majority at worst has declared that "express" means the same thing as "implied." At best, it has discarded the plain meaning of a simple rule for the sake of its own policy preferences—a decision that no court is empowered to make. It has circumvented plain interpretive direction from the Supreme Court and, finally, it has unnecessarily clouded a jurisdictional rule in a way that can only lead to confusion. I address these objections *seriatim*.

## I. *"Express" Does Not Mean "Implied."*

The rule at issue here, Fed.R.Civ.P. 54(b), provides that a partial final judgment may not be issued except "upon an express determination that there is no just reason for delay." The majority, however, reads the rule either as though the word "express" did not appear, or (similarly) as though "express" meant the same thing as "implied."

In accordance with any customary English usage, "express" means the very opposite of "implied." Thus, "express" is defined as "directly and distinctly stated or expressed rather than implied or left to

inference." *Webster's Third New Int'l Dictionary* 803 (Merriam–Webster 1986). Under this definition, "express determination that there is no just reason for delay" can mean only one thing: The judge's very words must state specifically that he or she has decided that there is no just reason for delay. That requirement would be most easily satisfied by the court's reciting the seven simple words, "There is no just reason for delay." But at least arguably, since the rule does not specifically require incantation of the seven very words, they could be paraphrased, provided that the court actually states that it had made the required determination.

Wrongly, the majority now permits the determination to be implied, rather than express: "If the language in the order [and record] reflects the district court's unmistakable intent to enter a partial final judgment under Rule 54(b), nothing else is required to make the order appealable." Majority op. at 1220. "In reaching this conclusion, we make the very reasonable assumption that federal district judges know the requirements of this frequently used rule." *Id.* at 1221.

The majority's reasoning arguably would be sound if the rule required "an implied determination" or even if the word "express" had been deleted, so that the rule only required "a determination that there is no just reason for delay." We might then reasonably conclude, or infer, from the circumstances, that the judge had made the decision that the rule requires.

But the presence of the word "express" should be enough of a clue that that word, rather than the word "implied," is what in fact was meant in the promulgation of the rule. And even more convincing than the presence of the word "express" is the fact that the rule was amended in 1946 to add the phrases at issue here. The original rule permitted piecemeal appeals without the inclusion, by the district court, of the certificate of no just reason for delay. The

---

**1.** Like Judge Williams, I agree that if we have jurisdiction to decide this appeal, which I be-

lieve we do not, the judgment of the district court should be affirmed.

rule proved unworkable, however. As the advisory committee observed,

> Some confusion ensued. Hence situations arose where district courts made a piecemeal disposition of an action and entered what the parties thought amounted to a judgment, although a trial remained to be had on other claims.... In the interim the parties did not know their ultimate rights, and accordingly took an appeal, thus putting the finality of the partial judgment in question.

Quoted in 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 54.01[6] at 54–15 (2d ed. 1988). Thus, the original rule yielded considerable uncertainty, not to mention risk, for the parties and their attorneys:

> ... The label which the district court attached to its adjudication was not controlling. Although it may have thought that it was entering a final judgment and so described the adjudication, if the adjudication lacked finality, under applicable principles, an appeal from such a 'judgment' would be dismissed, unless, of course, the interlocutory appeal was authorized by statute and generally it would not be. On the other hand if the district court made an adjudication that was final under applicable principles, finality was not destroyed by the district court's label and the time for appeal began to run from the entry of the judgment. If there was any real doubt as to the finality of an adjudication, and there often was, careful practice dictated an appeal by a losing party dissatisfied with the adjudication; and, of course, fruitless appeals were often taken. The wasted expense, time, and effort of litigants and time and effort on the part of the courts was considerable.

*Id.* ¶ 54.25 at 54–99 (footnotes omitted).

For these very reasons, the certification requirement was added to the rule. It is an undeniable indication that the rule, after 1946, requires certainty, and not merely probability based upon inference and impli-

cation, that the district judge has decided to allow a piecemeal appeal. The device chosen was an explicit statement by the judge that he or she has determined that there is no just reason for delay.

The majority, however, wholly reads the 1946 amendment out of the rule. According to the majority's rationale, whenever it appears that the district court intended to enter judgment for fewer than all parties, or on fewer than all issues, that partial judgment must be deemed final. But precisely the same was true before 1946.

Thus, the same uncertainty that attended the pre-1946 rule will appertain now, in light of today's holding. The en banc court has now expunged what the Supreme Court added in 1946: a requirement that no partial judgment can be final under rule 54(b) without an explicit statement from the district judge that he or she has decided that there is no reason for delay. Without such a statement, the prospective appellant is left in the same Never–Never–Land as before, wondering whether to take a protective appeal or risk losing the right to appeal after judgment on the remaining claims.

The majority does not mention the fact of the 1946 amendment but pays lip service to its language by reasoning that surely if a judge enters judgment "pursuant to rule 54(b)," we can conclude that the judge knows the requirements of the rule and implicitly has made the determination of no just reason for delay. As I have explained, this is a curious reading of the word "express," which, if it means anything, surely must denote that the determination may not be "implied."

Importantly, the majority's gloss on the word "express" cuts deeper than the rule at issue here. A cursory computer-assisted word search reveals that just since the beginning of 1980, the word "express" has appeared in more than two thousand Fifth Circuit published opinions.[2] Consistently, those opinions appear to construe "ex-

---

**2.** Some of those uses are inapposite to the issue before us, such as "to *express* satisfaction" or "the American *Express* Company." However, in hundreds of reported cases from this circuit since 1980, the word "express" is used, as here, to connote something that is stated rather than implied.

press" as the very opposite of "implied." One may wonder whether, in light of today's majority's strained interpretation of the term, future litigants in unrelated areas of the law can rely upon this court to interpret "express" to mean what it says.

The concept of "express" is central to divers doctrines in the law. Thus, we speak frequently, in and out of the law, of "express statutory provisions," "express findings," "express agreements," "express waivers," "express disclaimers," "express warranties," and the like. For example, in *Jhaver v. Zapata Off-Shore Co.*, 903 F.2d 381, 385 (5th Cir.1990), we acknowledged that under Texas law, the duty of good faith and fair dealing can be created "with express contractual language." The panel noted that no such "express language" appeared on the face of the subject documents, nor was there any suggestion that the duty could be merely implied. In *United States v. Garcia*, 903 F.2d 1022, 1026 n. 6 (5th Cir.1990), we noted that a district judge may depart from the criminal sentence suggested by the Sentencing Guidelines only if it "expressly found special circumstances ... warranting the departure" but that the judge "did not make any such express findings" as to the defendant.

In *United States v. 6600 N. Mesa, El Paso, Texas (In re Ramu Corp.)*, 903 F.2d 312, 319 (5th Cir.1990), we stated that "before granting a stay under 21 U.S.C. § 881(i) a district court must make express findings of fact and conclusions of law...." We concluded that since the court "entered only a one sentence order, ... we must therefore direct it to issue fully articulated and explicit findings...." Thus, we held that the requirement of "express findings" is not satisfied by "implied findings" but only by "fully articulated and explicit" ones. In *Auster Oil & Gas, Inc. v. Stream*, 891 F.2d 570, 576 & n. 8 (5th Cir.1990), we relied upon the "express condition precedent" of timely notice by the insured of the filing of suit. We distinguished "other lack of notice cases in which Louisiana courts had required the insurer to show prejudice[, as] the policies in those cases did not contain express language that the notice requirements were a condition precedent to coverage."[3]

## II. *The Majority's Reasoning Is Flawed in Light of Recent Supreme Court Precedent.*

The majority's reasoning depends not only upon the evisceration of the word "express," but upon a decided preference for presuming that the district court, in its order, implicitly has made all of the determinations required of it by law. In a different context the Supreme Court has overtly rejected this rationale in its most recent analysis of what is meant by the word "expressly."

In *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), the Court considered whether the "plain statement rule" of *Michigan v. Long*, 463 U.S. 1032, 1042 & n. 7, 103 S.Ct. 3469, 3477 & n. 7, 77 L.Ed.2d 1201 (1983), applies in a case on federal habeas corpus review as well in one on direct review. The Court held in the affirmative, concluding that in habeas proceedings the Court may address a federal

---

**3.** Other recent cases note the simple and commonly understood, but critical, distinction between "express" and "implied." *E.g., Simpson v. James*, 903 F.2d 372, 376 (5th Cir.1990) ("a contract, express or implied"); *Allied Pilots Ass'n v. American Airlines, Inc.*, 898 F.2d 462, 465 (5th Cir.1990) ("express and implied terms of its collective agreement"); *Polk v. Dixie Ins. Co.*, 897 F.2d 1346, 1348 (5th Cir.1990) ("express or unmistakably implied claim"); *Trans World Airlines, Inc. v. Mattox*, 897 F.2d 773, 780 (5th Cir.1990) ("[T]his section preserves state law claims from implicit preemption, but not from express preemption."); *Griffith v. Oles (In re Hipp, Inc.)*, 895 F.2d 1503, 1519 (5th Cir.1990) (jurisdiction "not expressly or impliedly" autho-

rized); *Mitchell v. Carlson*, 896 F.2d 128, 131 (5th Cir.1990) ("expressly or by implication"); *Railway Labor Executives' Ass'n v. City of Galveston*, 897 F.2d 164, 169 (5th Cir.1990) ("express or implied labor-management agreement"); *Rubarts v. First Gibraltar Bank, FSB (In re Rubarts)*, 896 F.2d 107, 115 (5th Cir.1990) ("either on the express understanding or under circumstances from which an understanding will be implied"); *Brotherhood of Ry. Carmen v. Atchison, Topeka & Santa Fe Ry.*, 894 F.2d 1463, 1468 (5th Cir.1990) ("implied as well as express terms"); *Lowery v. Illinois Cent. Gulf R.R.*, 891 F.2d 1187, 1192 n. 1 (5th Cir.1990) ("express or implied invitation").

issue considered by the state court unless the state court had relied upon an adequate and independent state ground, such as procedural default. 489 U.S. at ——, 109 S.Ct. at 1044. The Court formulated the test as follows: "[A] procedural default does not bar consideration of a federal claim ... unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." 489 U.S. at ——, 109 S.Ct. at 1043 (citations and internal quotation marks omitted). The Court took the "clearly and expressly" test from *Long,* 463 U.S. at 1041, 103 S.Ct. at 3476.

The general issue faced in *Harris* is similar to the question posed here: whether a reviewing court should require requisite findings to be set forth explicitly, i.e., "expressly." In *Harris* the respondents argued "that if a state-court decision is ambiguous as to whether the judgment rests on a procedural bar, the federal court should presume that it does." 489 U.S. at ——, 109 S.Ct. at 1043–44. The respondents also asserted "that the 'plain statement' requirement entails a presumption that state courts disobey their own procedural bar rules." 489 U.S. at —— n. 11, 109 S.Ct. at 1044 n. 11.

Here, similarly, the en banc majority, in inferring a finding of "no just reason for delay," explains that it is "mak[ing] the very reasonable assumption that federal district judges know the requirements of this frequently used rule." Majority op. at 1221. But the Court rejected such reasoning in *Harris:* "The 'plain statement' rule relieves a federal court from having to determine whether in a given case ... the state court has chosen to forgive a procedural default." 489 U.S. at —— n. 11, 109 S.Ct. at 1044 n. 11.

Such reasoning should apply, by analogy, here. In the case under review, the district court stated that it was entering judgment "pursuant to rule 54(b)." But nowhere in the record—i.e., nowhere in the court's order, the motions or pleadings, the transcripts, or anywhere else—did the court or the parties evince cognizance of the *requirements* of that rule.

The requirement at issue, of course, is that rule 54(b) may not be invoked unless the court has separately decided that there is no reason to delay a partial final judgment (and any consequent appeal). Given the presumption against fragmented, piecemeal appeals—a central concern addressed by the 1946 amendment—the district court must weigh carefully the need for prompt resolution as to a specific claim or party against the desirability of avoiding premature appeals.

Only by conjecture, supposition, and surmise can we ascertain whether the district court made that weighing here, as the court most assuredly has not told us that it has done so. For all we know with any certainty, the court may have overlooked (or possibly "chosen to forgive," *Harris, id.*), the requirement. But that is the very possibility that the Supreme Court foreclosed in *Harris,* in the interest of certainty.

An obvious difference between *Harris* and the instant case is that here we interpret a rule, while in *Harris* the Court was extending its prior test ("clearly and expressly") to the habeas context. Instructive for our purposes, however, is the Court's interpretation of its own chosen word ("expressly"), for that is the same basic word ("express") that is used in rule 54(b).

In *Harris* the Court adopted a strict view of what is meant by "clearly and expressly." On the question of whether the state court had "clearly and expressly" relied upon waiver, the Court noted that "the state court perhaps laid the foundation for such a holding by stating that most of petitioner's allegations 'could have been raised [on] direct appeal.'" 489 U.S. at ——, 109 S.Ct. at 1045 (brackets in original, citation omitted). Nonetheless, the Court concluded that "this statement falls short of an explicit reliance on a state-law ground." *Id.* Thus, *Harris v. Reed* serves as the best available indication of how the Supreme Court interprets the word "express"; we should heed that interpretation here.

By any measure, the order in the case *sub judice* falls far shorter than that in

*Harris* of being an "express" statement that satisfies the rule. At least in *Harris,* the state court had addressed the subject issue tangentially; here, not a hint was given that the district court thought of, addressed, or made the requisite determination, or even that it was cognizant of the rule's requirement. Thus, the chief rationale employed by the majority—that from the context we may assume that the district court took the steps required of it—is impermissible in light not only of the fact that "express" cannot mean "implied," but also in view of the Supreme Court's demanding reading of the term "expressly" in *Harris.*

Yet another provision dooms the majority's reasoning: the "however designated" language of rule 54(b). I address that matter in the next section.

### III. *The En Banc Majority Totally Ignores the "However Designated" Provision of Rule 54(b).*

Central to the en banc majority's reasoning is the theory that by calling its order an "F.R.C.P. 54(b) JUDGMENT," and by stating in the order "that there be final judgment entered pursuant to [rule] 54(b)," the district court somehow incorporated into the order (by implication) an "express determination that there is no just reason for delay." Indeed, so necessary is this incorporation theory to the majority's reasoning that it is the only thing of substance that distinguishes this case from *Mills v. Zapata Drilling Co.,* 722 F.2d 1170 (5th Cir. 1983), which the majority readily (and properly) discards as incorrect precedent.

However, nowhere does the majority mention or discuss the "however designated" language of rule 54(b), which is absolutely fatal to the incorporation theory upon which the majority so heavily relies. As noted, the rule permits a partial judgment "only upon an express determination that there is no just reason for delay." The next sentence of the rule provides as follows:

In the absence of such determination and direction, any order or other form of decision, *however designated,* which ad-

judicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. [Emphasis added.]

Remarkably, despite this sentence, the majority insists that by *designating* its order as a rule 54(b) judgment, the district court has saved it from the "express determination" requirement. But the "however designated" provision adamantly proscribes such a result: It states that absent an "express determination," the court cannot effect compliance by simply calling its order a "rule 54(b) judgment." In other words, the name makes no difference: Whatever the document is entitled, or "designated," it nevertheless must contain the requisite "express determination that there is no just reason for delay."

The inclusion of the "however designated" proscription serves to underscore the importance of the "express determination" requirement in the 1946 amendment. The drafters apparently viewed this requirement as absolute—one that could not be circumvented by use of a mere title. Thus, the *mandatory* nature of the certification provision is shown by the use of the word "express" and by the "however designated" provision. The en banc majority too easily reads away these plain constraints (in the case of "however designated," by ignoring it) in the interest of what it views as practicality. In so doing, the majority has failed to heed the Supreme Court's admonition that we should take the federal rules as we find them.

### IV. *The Supreme Court Has Directed that We Heed the Plain Meaning of the Federal Rules.*

Recently, the Supreme Court has emphasized the importance of applying the precise words of the federal rules. "We ... give the Federal Rules of Civil Procedure their plain meaning, ... and '[w]hen we find the terms ... unambiguous, judicial

inquiry is complete.' " *Pavelic & LeFlore v. Marvel Entertainment Group,* —— U.S. ——, 110 S.Ct. 456, 458, 107 L.Ed.2d 438 (1989) (citing *Walker v. Armco Steel Corp.,* 446 U.S. 740, 750 n. 9, 100 S.Ct. 1978, 1985 n. 9, 64 L.Ed.2d 659 (1980), and quoting *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981)).

The Court insists upon adherence to a rule's strict meaning even where it acknowledges that the result is harsh. In *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), the Court applied a strict reading to the requirement of Fed.R.App.P. 3(c) that a notice of appeal "shall specify the party or parties taking the appeal." Dismissing the appeal of a party not specifically named except by the designation "et al.," the Court acknowledged that its holding "leads to a harsh result in this case, but we are convinced that the harshness of our construction is 'imposed by the legislature and not by the judicial process.' *Sciavone v. Fortune,* 477 U.S. 21, 31, 106 S.Ct. 2379, 2385, 91 L.Ed.2d 18 (1986) (construing Federal Rule of Civil Procedure 15(c) in a similarly implacable fashion)." *Torres,* 487 U.S. at 318, 108 S.Ct. at 2409.

The Court makes the same admonition regarding the reading of statutes. In *Northbrook Nat'l Ins. Co. v. Brewer,* —— U.S. ——, 110 S.Ct. 297, 107 L.Ed.2d 223 (1989), the Court, observing that "[w]e cannot doubt that Congress meant what it said," *id.* 110 S.Ct. at 301, insisted upon a literal meaning of a statute despite its "seeming incongruity", *id.* at 300. The Court overruled *Campbell v. Insurance Co. of N. Am.,* 552 F.2d 604 (5th Cir.1977) (per curiam), in which a panel of this court had departed from the precise words of the statute in the interest of "policy considerations." *Id.* at 605.

Here, in adopting what it modestly terms a "practical, common sense interpretation of Rule 54(b)," majority op. at 1221, the en banc court has resorted to the same policy-consideration approach that was rejected in *Northbrook.* But the Supreme Court has made it patent that we have no warrant to engage in such judicial legislation. And even assuming that we have such a role, the interpretation imposed today by the en banc majority confuses, rather than clarifies, the jurisprudence of this court and puts us generally out of step with other circuits.

V. *The Majority's Case-by-Case Approach Can Only Lead to Uncertainty.*

Sitting en banc in this case, this court has an opportunity to devise a bright-line test that will warn litigants when the thirty-day clock begins ticking for purposes of appealing a partial final judgment entered under rule 54(b). Such a test would avoid protective, duplicative appeals and, most importantly, would prevent the harsh result of a party's losing its right to appeal because it was not aware that a final, appealable judgment had been entered.

Rule 54(b) addresses an overriding concern for certainty and for an express and unmistakable determination of finality in ambiguous multi-party and multi-claim situations. As Professor Wright states, '[Rule 54(b) ] provides much-needed certainty in determining when a final and appealable judgment has been entered.... "[I]f [the court] does choose to enter such a final order, [the court] must do so in a definite, unmistakable manner." ' [10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure,* § 2654 (1983) ] (quoting *David v. District of Columbia,* 187 F.2d 204, 206 (D.C.Cir. 1950)). *FSLIC v. Tullos–Pierremont,* 894 F.2d 1469, 1475–76 (5th Cir.1990).

The panel in *Tullos–Pierremont* specifically condemned the approach of a "case-by-case determination" of rule 54(b) appealability. Today, however, the en banc court enthrones that very interpretation, requiring an inquiry in each case as to "whether this language [in the order] reflects with unmistakable clarity the district judge's intent to enter a partial final judgment under Rule 54(b)." Majority op. at 1221. A bright-line maxim, however, would be easier and fairer to administer and would not

subject the parties and the court to the uncertainty that the court installs today.

I also take issue with the majority's assertion that "[w]ith one exception, our Rule 54(b) cases follow a consistent path." *Id.* at 1219. Certainly, that cannot be true after today's ruling has blurred the rule, and it was not true before. As a panel of this court recently observed, "Our precedent on what constitutes a Rule 54(b) certification is in disarray." *Warfield v. Fidelity & Deposit Co.*, 904 F.2d 322, 324–25 n. 4 (5th Cir.1990).

Several of our opinions have stated that we interpret rule 54(b) strictly. In *Section 1120(a)(1) Committee of Unsecured Creditors v. InterFirst Bank Dallas (In re Wood & Locker, Inc.)*, 868 F.2d 139 (5th Cir.1989), referring to "the uncertainty that Rule 54(b) was designed to eliminate," *id.* at 145, we noted that "we have generally required that Rule 54(b) be strictly followed: If the trial court has not followed Rule 54(b) and expressly certified a partial judgment as final, the appeal will be dismissed." *Id.* (citations omitted). Similarly, in *Thompson v. Betts*, 754 F.2d 1243, 1245 (5th Cir.1985), we noted that a rule 54(b) judgment is possible only where "the district court ... expressly determines that there is no reason for delay...."

On the other hand, the panel in the instant case opined that "[t]his circuit has not required strict compliance with the express determination requirement of Rule 54(b)." *Kelly v. Lee's Old Fashioned Hamburgers, Inc.*, 896 F.2d 923, 924 (5th Cir.1990). The panel added that "[a]lthough we encourage district courts to follow the rule and make the 'express determination' it requires, many of our cases have not required it in the past and we do not require it now." *Id.*

In its attempt to set our jurisprudence straight, the en banc majority declares that only one of our prior cases, *Mills v. Zapata Drilling Co.*, is "out of step" and in need of being overruled. Majority op. at 1221. Thus, in enunciating its case-by-case standard, the court leaves it to the hapless litigant to determine whether this circuit henceforth recognizes the strict interpretation of *Wood & Locker* and *Thompson v. Betts* or the relaxed standard of *Crowley Maritime Corp. v. Panama Canal Comm'n*, 849 F.2d 951 (5th Cir.1988). In *Crowley*, the panel explicitly relied upon *Mills* in rejecting both a "form-over-substance approach to the Rule 54(b) requirements" and " 'a technical, expensive, and burdensome compliance' " with the "express determination" requirement. *Id.* at 953 (quoting *Mills*, 722 F.2d at 1173). Today, the court specifically ("expressly"?) places its stamp of approval on *Crowley* but overrules *Mills*. At least arguably, therefore, our rule 54(b) law in this circuit remains in disarray.

Nor can I agree that it is too onerous to require a rule 54(b) order to contain an explicit expression to the effect that the district judge in fact has decided that there is no reason for delay. Such an interpretation would be true to the words of the rule and would require only a simple, brief recital, verbatim or paraphrased, from the district court. Most importantly, it would yield a reliable indication to the parties that a final, appealable judgment in fact had been entered.

Some circuits impose a much more exacting requirement, such as insisting upon a statement of reasons, by the district court, for its conclusion that there is no just reason for delay. E.g., *Cemar, Inc. v. Nissan Motor Corp. in U.S.A.*, 897 F.2d 120, 123 (3d Cir.1990) (citing *Curtiss–Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 8, 100 S.Ct. 1460, 1465, 64 L.Ed.2d 1 (1980)); *Ohio Carpenters Cent. Collection & Admin. Agency v. B.P. Jenkins, Inc.*, 887 F.2d 265 (6th Cir.1989) (per curiam). Others require the district court to recite the "talismanic [seven] words" from the rule. E.g., *In re Narowetz Mechanical Contractors, Inc.*, 898 F.2d 1306, 1308 n. 4 (7th Cir.1990). Still others hold that the mere mention of "rule 54(b)" in the order is insufficient without an express determination of no just reason for delay. E.g., *Frank Briscoe Co. v. Morrison–Knudsen Co.*, 776 F.2d 1414, 1416 (9th Cir.1985); *Mooney v. Frierdich*, 784 F.2d 875 (8th Cir.1986) (per curiam).

Thus, as the majority has acknowledged, there is a clean split among the circuits on this discrete issue of appellate jurisdiction. In the interest of fairness to parties who may seek or oppose partial appeals, it is hoped that this conflict may somehow be resolved. Concluding that, despite the best of intentions, the en banc majority has only muddied the water, I respectfully dissent.