**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 12, 2009

Charles R. Fulbruge III
Clerk

No. 08-10451

ENSCO INTERNATIONAL INCORPORATED,

Plaintiff-Appellee,

versus

CERTAIN UNDERWRITERS AT LLOYD'S
and Insurance Companies Subscribing to Policy Numbers and Cover Notes
PE0500247, LDC070105(B), LCD070105(A), and B0621ELOEN0105;
BC JOHNSON ASSOCIATES LLC; and BRYAN JOHNSON,

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Texas

Before JOLLY, SMITH, and OWEN, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

This case arises from a dispute over insurance policies (the "Policies") is-sued by the defendants (collectively, the "Underwriters") to plaintiff ENSCO In-ternational, Inc. ("ENSCO"). The sole issue is whether the Policies contain a waiver of the right to remove the case to federal court. Concluding that there is

a waiver, we affirm the district court's order of remand.

## I. Background

During Hurricane Katrina, an offshore drilling rig owned by ENSCO and insured by the Underwriters sustained serious damage. The Underwriters paid for the constructive total loss of the rig but not for the removal of debris from the rig that fell to the sea floor near a platform owned by another company. ENSCO, asserting that the Policies covered that removal, sued the Underwriters in state court in Dallas County, consistent with the Policies' forum selection clause (titled "Choice of Law & Jurisdiction"), which provides, "The proper and exclusive law of this insurance shall be Texas law. Any disputes arising under or in connection with it shall be subject to the exclusive jurisdiction of the Courts of Dallas County, Texas."

The Underwriters removed the matter to federal court, asserting removal rights under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). *See* 9 U.S.C. § 205.[1] ENSCO moved to remand, asserting that the forum selection clause, by establishing "exclusive" jurisdiction, effected a waiver of the right to remove. The district court granted the motion, and the Underwriters appeal.

## II. Analysis.

This appeal hinges on construction of the Policies' forum selection clause.

---

[1] The parties disagree as to whether the Convention applies, but we need not decide that. The district court evidently assumed it applies. ENSCO, which contends in a footnote that it does not apply, cites only its own motion to remand and has therefore not adequately briefed the issue. *See United States v. Jackson*, 549 F.3d 963, 972 n.6 (5th Cir. 2008) (stating that "[a]rgument by reference is not permitted") (citing *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993)), *petition for cert. filed* (Feb. 12, 2009) (No. 08-8714). Although the forum selection clause adopts Texas law as "[t]he proper and exclusive law of this insurance," neither party argues that this court should consider the applicability of the Texas Arbitration Act, TEX. CIV. PRAC. & REM. CODE § 171.001 *et seq*.

We consider first, the relevant standard for waiver, and second, the application of that standard.

## A.  The *McDermott* Standard.

"For a contractual clause to prevent a party from exercising its right to removal, the clause must give a 'clear and unequivocal' waiver of that right." *City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004). The *New Orleans* court cited *McDermott International, Inc. v. Lloyds Underwriters*, 944 F.2d 1199 (5th Cir. 1991), one of very few federal cases addressing waiver of removal rights under the Convention, for the clear-and-unequivocal standard. *Id.*[2] There are three ways in which a party may clearly and unequivocally waive its removal rights: "[1] by explicitly stating that it is doing so, [2] by allowing the other party the right to choose venue, or [3] by establishing an exclusive venue within the contract." *New Orleans*, 376 F.3d at 504.

The Underwriters claim, however, that under *McDermott* only the first of those methods is applicable in the Convention context.  In effect, they propose a "magic words" approach to waiver.  The *McDermott* court, however, never stated that it would reject purported waivers that do not incant the specific words that the Underwriters claim are required.  The Underwriters rely instead on a literal reading of the *McDermott* court's use of the words "explicit" and "express" in explaining its waiver standard.  Because all waivers that do not use the term "waive" or "remove" are by definition "implicit," the Underwriters say, there is no waiver here.[3]

---

[2] Also in *Suter v. Munich Reinsurance Co.*, 223 F.3d 150, 159 (3d Cir. 2000), the court cited *McDermott* as support for its "clear and unambiguous language" standard.

[3] At oral argument, the Underwriters took this argument to its logical conclusion:

Q:  Well, suppose you had a contract that said: "And we agree that there shall

(continued...)

The *McDermott* court's choice of terms does not bear the weight that the Underwriters apply. Contrary to the Underwriters' reading, the court actually formulated its waiver test in several ways, using a number of terms and phrases. In fact, the *McDermott* court used the terms "explicit," "express," "unambiguous," and "clear and unequivocal" almost interchangeably.[4] These words, of course,

---

[3] (...continued)
be no litigation in this matter that shall occur anywhere else, ever, anywhere else, except in the state courts of Dallas County"?

A: I don't think that would suffice, your Honor. . . . [T]he problem is, it doesn't call the parties' attention to what they are doing.

[4] One section of the *McDermott* opinion is titled "The Express Waiver Rule," but two paragraphs into that section, the court said that "we will give effect only to explicit waivers." *McDermott*, 944 F.2d at 1209. It then stated twice that it was adopting "the express waiver rule." *Id.*

The *McDermott* court also mentioned the "clear and unequivocal" standard. First, it referred to courts holding that Foreign Sovereign Immunities Act ("FSIA") cases are to be tried "in federal court unless the parties unequivocally choose otherwise." *Id.* at 1212 (citing *In re Delta Am. Re Ins. Co.*, 900 F.2d 890 (6th Cir. 1990)). The court then said that it found "this reasoning persuasive and applicable to Convention Act cases." *Id.* The *Delta* court, though, used the terms "explicit" and "unequivocal" interchangeably. *Compare Delta*, 900 F.2d at 893 ("Against the backdrop of the FSIA, however, the principle that waiver must be clear and unequivocal assumes even greater significance."); *with id.* at 894 ("[W]e hold that any claimed waiver of the right of removal stemming from contractual language must be explicit."). The *McDermott* court later referred to the *Delta* rule as an "express waiver rule." *McDermott*, 944 F.2d at 1213.

Second, when explaining that "precedent" supported its holding, the *McDermott* court observed that "[e]ven in cases that do not involve the Convention or the FSIA, many federal courts have refused to find a contractual waiver of removal rights absent a 'clear and unequivocal' expression of intent to waive those rights." *Id.* at 1212. In particular, it explained that *City of Rose City v. Nutmeg Insurance Co.*, 931 F.2d 13 (5th Cir. 1991), a non-Convention case that we discuss at length *infra*, was "conceptually consistent with the 'unequivocal expression rule.'" *McDermott*, 944 F.2d at 1212-13. The *McDermott* court, in other words, used cases discussing the "clear and unequivocal" standard as support for its express (or explicit) waiver standard.

The Third Circuit's language in *Suter* is similar. That court used the terms "clear and unambiguous" and "express" interchangeably in describing waiver of removal in Convention cases. *See Suter*, 223 F.3d at 158 ("[T]here can be no waiver of a right to remove under the
(continued...)

mean different things, and none of them demands the reading that the Underwriters urge.[5] To understand the *McDermott* standard, we must therefore consider the *McDermott* court's actual reasoning, and a close reading of *McDermott* shows that the Underwriters misunderstand the standard it articulates. Although waiver must be clear and unequivocal, it may be implicit where necessary to give effect to all contractual provisions.

### 1. The *McDermott* Contract.

*McDermott*'s precise holding is not that Convention removal waivers must contain magic words, as the Underwriters claim, but merely that the following language from the contract's "service of suit clause" was insufficient to waive the right of removal to federal court of the particular question being litigated:

> It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the Assured will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court.

---

[4] (...continued)
Convention Act in the absence of clear and unambiguous language requiring such a waiver[.]"); *id.* at 159 ("[A]n express waiver requirement will serve the various purposes of the Convention Act[.]"); *id.* ("Our adoption of the 'clear and unambiguous language' standard is supported . . . also by . . . [*McDermott*]. [In *McDermott*, the Fifth Circuit] found that an express-waiver rule served the Convention Act's goals of reciprocity, uniformity, and speed and was consistent with circuit precedent.").

[5] This court, sitting en banc more than a year before *McDermott* was decided, held that "express" can mean "implied." *See Kelly v. Lee's Old Fashioned Hamburgers, Inc.*, 908 F.2d 1218, 1220 (5th Cir. 1990) (per curiam) (en banc) (concluding that the Federal Rule of Civil Procedure 54(b) "express determination" rule is satisfied whenever "the district court's unmistakable intent" is discernable and that the district court therefore need not "mechanically recite" any particular words); *id.* at 1222 (Smith, J., joined by Clark, C.J., and Gee, Johnson, Williams, Jolly, and Barksdale, JJ., dissenting) ("[T]he en banc majority . . . has declared that 'express' means 'implied.'").

*McDermott,* 944 F.2d at 1200 (citations omitted). That provision—because it allowed one party to select a venue—superficially appears consistent with the second of the three *New Orleans* bases for waiver, but it is not explicit.

If the *McDermott* court had required actual reference to "waiver" and "removal," the analysis of the *McDermott* contract would have been straightforward: The court could merely have decided that because no such reference was present, there was no waiver. But the *McDermott* court did not do so; quite to the contrary, it began its analysis by observing that "[w]hen a policy's service-of-suit clause applies, its probable effect is to waive the insurer's removal rights." *Id.* at 1204-05 (citing *Nutmeg,* 931 F.2d at 15-16). The *McDermott* court, in other words, would have considered accepting a waiver based on the second ground used in *New Orleans,* notwithstanding the fact that such a waiver would have been implicit.

Other aspects of the contract, however, persuaded the *McDermott* court that the service-of-suit clause did not in fact constitute a waiver and that the contract's apparent consistency with the second *New Orleans* basis was illusory. The venue question in *McDermott* was venue for "disputes concerning the proper forum to decide arbitrability questions." *Id.* at 1205. That question, though, was covered not only by the service-of-suit clause but by a potentially "co-equal forum selection clause" governing venue for arbitration. The *McDermott* contract was therefore ambiguous, and the service-of-suit clause did not answer the venue question. *Id.*

The court also observed that the service-of-suit clause could be read as a waiver of personal jurisdiction only, therefore leaving open the possibility of subsequent removal.[6] The court reasoned as follows:

---

[6] "Consent to personal jurisdiction is of value especially with respect to defendants that are incorporated and have their principal place of business abroad." *McDermott*, 944 F.2d at
(continued...)

6

> Underwriters' exercise of its federal removal right is not necessarily inconsistent with any of its obligations under the service-of-suit clause. Underwriters may remove a case after submitting to the jurisdiction of Louisiana's courts and complying with all necessary requirements to give Louisiana's courts power over the suit. There would be no final decision in that court for Underwriters to abide by if it exercised its removal right. All matters would be determined in accordance with the practice and law of the court chosen by McDermott in the sense that all state courts follow the removal law established by Congress.

*Id*. at 1206. Not only was the *McDermott* contract's service-of-suit clause ambiguous with respect to venue, but the venue selected in accordance with it would not be exclusive.

In short, instead of merely relying on the contract's lack of explicit references to waiver and venue, the *McDermott* court showed, in great detail, that the contract did not plainly set a venue at all and could in fact permit invocation of federal removal from a state venue. The Underwriters' proposed rule would treat that discussion as redundant. It is evident, nonetheless, that the *McDermott* court found no waiver—not because the other bases for waiver later set out in *New Orleans* were inapplicable, but because they were not satisfied.[7]

### 2. *McDermott* and *Nutmeg.*

The *McDermott* court then considered and rejected an analogy to *Nutmeg* —a case not involving the Convention—in which a similar contractual provision was deemed to waive removal. The *Nutmeg* contract had only a single forum selection clause reading:

---

[6] (...continued)
1205-06 & n.10. Because the underwriters in *McDermott* fit that description, the court found that interpretation especially likely.

[7] This interpretation of *McDermott* is consistent with *Waters v. Browning-Ferris Industries, Inc.*, 252 F.3d 796, 797-98 (5th Cir. 2001).

> [W]e, at your request agree to submit to the jurisdiction of any Court of Competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court.

*Nutmeg*, 931 F.2d at 14. That language, of course, also resembles the second of the three *New Orleans* bases for waiver of removal, but it is neither "explicit" nor "express." The *McDermott* court––if it had adopted the rule that the Underwriters urge––could easily have distinguished *Nutmeg* just by pointing this out and explaining that although an implied waiver was adequate in *Nutmeg*, it could never be enough in the context of the Convention. Instead, the court demonstrated that although the *Nutmeg* contract was unambiguous, the *McDermott* contract was not.

The *McDermott* court, 944 F.2d at 1207, pointed out that the *Nutmeg* decision resulted partly from the rule that contracts are to be construed against the drafter and that that rule was inapplicable to the *McDermott* contract.[8] The *McDermott* court also observed that the *Nutmeg* contract had only a single relevant venue provision instead of two potentially conflicting ones. *Id*. *McDermott* suggested only one way in which the Convention affected waiver of removal rights: The Convention applies to arbitration agreements and arbitration awards involving United States citizens and at least one foreign citizen. That was the case in *McDermott*.[9] In *McDermott*, though––as explained above––the presence of international defendants made the personal jurisdiction explanation more plausible. *Id*. at 1205-06 & n.10. In *Nutmeg*, all the parties were domestic, and it therefore seemed less likely to the *McDermott* court that the parties would

---

[8] The parties have not briefed the application of that rule to the present case.

[9] *See McDermott*, 944 F.2d at 1208 ("The parties recognize that this suit concerns an arbitration agreement and is not entirely between United States citizens, so the Convention Act governs this case.") (citing 9 U.S.C. § 202, part of the Convention's implementation act).

have specifically waived objections to personal jurisdiction. *See id.* at 1207. Thus the applicability of the Convention gave the *McDermott* court another reason to find ambiguity.[10] Though the *McDermott* court distinguished *Nutmeg* in many ways, it never said that the Convention affected the waiver standard.[11]

Having shown that neither the contractual language itself nor an analogy to interpretations of similar language in other cases compelled a conclusion that removal rights had been waived, the *McDermott* court concluded that the parties had "executed an ambiguous contract and disavowed any expressed intent regarding wavier of Convention removal rights," meaning that no waiver existed. *Id.* at 1209. If the *McDermott* contract had been unambiguous, or if the parties to it had somehow expressed intent to waive removal rights, the court presumably would have found a waiver despite the Convention's applicability and the lack of magic words.

### 3. Interpretations of *McDermott.*

Given the law described above, the two implicit bases for clear-and-unequivocal waiver in the *New Orleans* formulation work as well as the explicit basis does, even in cases involving the Convention. It is difficult, given the *McDermott* court's approach, to imagine that panel's coming to the same conclusion if it had been presented with language such as, *e.g.*, "Underwriters hereon, at the request of the Assured will submit to the *exclusive* jurisdiction of any court of competent jurisdiction." Nor does *McDermott* give us any reason to think that its waiver rule would be applied in ways that render contractual terms meaning-

---

[10] *See id.* at 1206-07 ("The existence of alternate possible meanings for the service-of-suit clause in the policy here at issue distinguishes *Nutmeg.*"). In *New Orleans*, 376 F.3d at 504-05, the court adopted this interpretation of *Nutmeg.*

[11] Later in its opinion, in fact, the *McDermott* court, 944 F.2d at 1212-13, marshaled *Nutmeg* as support for the "unequivocal expression rule" on the ground that the *Nutmeg* court found the contract before it to be unambiguous.

less.

No decision interpreting *McDermott* requires the contrary conclusion urged by the Underwriters. In *Beiser v. Weyler*, 284 F.3d 665, 672 (5th Cir. 2002), the court explained: "[In *McDermott* w]e established a clear statement rule for waivers of a litigant's rights under § 205. A party may only waive his right to remove under the [Convention] by clearly and explicitly saying so in the agreement." That language, though, is not unambiguous support for the Underwriters' position. A "*clear* statement rule" does not mean the same thing as an "*explicit* statement rule." *Beiser*, at any rate, did not involve an application of the *McDermott* rule, so the quoted language is at best *dictum*. Nor did the *Beiser* court explain what it means for a waiver to be "clear and explicit."

Moreover, the *New Orleans* court made no effort to distinguish its approach to waiver from *McDermott*'s; the *New Orleans* court gave no indication of a special explicit waiver requirement that applies only in Convention cases. *McDermott*'s discussion of waiver in the Convention context seems almost indistinguishable from the explanation of waiver by forum selection in *New Orleans*.

> A party's consent to jurisdiction in one forum does not necessarily waive its right to have an action heard in another. For a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive.

*New Orleans*, 376 F.3d at 504.

*New Orleans*, then, explains why the *McDermott* contract was not deemed a waiver. In fact, the *McDermott* court could have used this very language when it explained that the forum selection clause it interpreted was a waiver only of personal jurisdiction. The *McDermott* contract allowed McDermott to select venue, but not an exclusive venue; *New Orleans* explains that such a venue-selection provision would not be sufficient as a waiver in any case, Convention or not.

It follows that the Underwriters' proposed heightened standard for Con-

vention removal has no basis in law. *McDermott* permits waiver by means other than express waiver, and the *New Orleans* three-part synthesis, which accurately incorporates the *McDermott* standard, applies in the context of the Convention.

## B. Application.

The question whether the Policies meet the *McDermott* waiver standard is properly answered under the "clear and unequivocal" test explicated in *New Orleans*. We consider whether the Policies, by any of the means the *New Orleans* court mentioned, necessarily exclude continued exercise of removal rights. The Underwriters have effectively conceded, in their briefs and at oral argument, that our rejection of their proposed interpretation of *McDermott* disposes of their appeal.

The third *New Orleans* basis for waiver—contractual specification of jurisdiction in a way that "clearly demonstrates the parties' intent to make that jurisdiction exclusive"—is the one that is relevant here. *New Orleans*, 376 F.3d at 504. The Policies' forum selection clause fixes "exclusive" venue for litigation in "the Courts of Dallas County, Texas." This, *prima facie*, satisfies *New Orleans*.[12]

---

[12] In *Argylle Equities LLC v. Paolino*, 211 F. App'x 317, 318 (5th Cir. 2006), this court correctly stated that a contract providing that "[b]orrower hereby consents to the exclusive jurisdiction of the courts sitting in Kendall County, Texas, United States of America" is an unambiguous waiver. Contractual references to the courts of a particular county are to state courts, not to federal courts that happen to sit there.

> Federal district courts may be in Texas, but they are not of Texas. Black's Law Dictionary defines "of" as "denoting that from which anything proceeds; indicating origin, source, descent." Federal courts indisputably proceed from, and find their origin in, the federal government, though located in particular geographic regions. By agreeing to litigate all relevant disputes solely in "the Courts of Texas," TSE waived its right to removal.

*Dixon v. TSE Int'l, Inc.*, 330 F.3d 396, 398 (5th Cir. 2003) (per curiam) (footnote omitted). *See also Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 321 (10th Cir. 1997) ("Because

(continued...)

11

It is far more definite than was the provision construed in *McDermott*. Removal may not be inconsistent with a party's "submit[ting] to the jurisdiction" of state court, or with all matters being decided in accordance with state court "law and practice," *see McDermott,* 944 F.2d at 1206, but it *is* inconsistent with a situation in which the state courts in Dallas County would have "exclusive" jurisdiction. No party has suggested, and we see no reason to think, that the Policies' language could be a waiver of personal jurisdiction only. In short, permitting removal would read the word "exclusive" out of the contract.[13]

Nor, unlike the contract provisions in *McDermott*, do other provisions of the Policies compromise the plain directive of the forum selection clause. In *McDermott*, we found that the litigation could be governed by either of two independent and coequal forum selection clauses. *Id*. at 1204-06. The Policies, though, contain an arbitration provision setting venue in London and the forum selection clause setting venue in Dallas County.[14] The Underwriters have not suggested that these provisions conflict, as did the analogous provisions in *McDermott*. Where there is no such ambiguity, the *McDermott* court's analysis permits the Policies' "exclusive jurisdiction" language to mean what it says.

The Underwriters have waived their right to remove. The order of remand is AFFIRMED.

---

[12] (...continued)
the language of the clause refers only to a specific county and not to a specific judicial district, we conclude venue is intended to lie only in state district court."); *Ondova Ltd. Co. v. Manila Indus., Inc.*, 513 F. Supp. 2d 762, 773 (N.D. Tex. 2007).

[13] In *Suter*, 223 F.3d at 158, which interchangeably referred to a "'clear and unambiguous language' standard" and to an "express waiver requirement," the Third Circuit explained that it would "resolv[e] any ambiguity in contract language against waiver." Regardless of *Suter*'s references to "express waiver," apparently no court has recommended disregarding unambiguous contractual terms merely because they lack magic words.

[14] That is the best way to make sense of—and give effect to—the forum selection clause's reference to "disputes arising under or in connection with" the Policies.

OWEN, Circuit Judge, concurring:

I concur in the judgment only.

With great respect, I do not join Judge Smith's opinion because it relies heavily on this court's decision in *City of New Orleans v. Municipal Administrative Services., Inc.*,[1] which concerned removal under 28 U.S.C. § 1441. Our decision in *McDermott International, Inc. v. Lloyds Underwriters of London*[2] examined removal under 9 U.S.C. § 205, and we should adhere to that binding precedent.

This court said in *McDermott* that a waiver of the right to remove under § 205 must be "express"[3] or "explicit."[4] The Supreme Court has since had occasion to consider the meaning of "explicit" in *C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*[5] The issue in that case was whether an Indian Tribe had waived its sovereign immunity by agreeing to a contract with an arbitration agreement that provided for enforcement of any arbitration award "'in accordance with applicable law in any court having jurisdiction thereof.'"[6] The contract also contained a choice-of-law provision that selected "the law of the place where the Project is located," which was Oklahoma.[7] The Supreme Court

---

[1] 376 F.3d 501 (5th Cir. 2004).

[2] 944 F.2d 1199 (5th Cir. 1991).

[3] *Id.* at 1209, 1211, 1213 (adopting an "express waiver rule").

[4] *Id.* at 1209 ("There are four reasons why we will give effect only to explicit waivers of Convention Act removal rights."); 1212 (finding "persuasive" the reasoning that a waiver of removal rights under the Foreign Sovereign Immunity Act, 28 U.S.C. § 1441(d), must be "'explicit'") (quoting *In re Delta America Re Ins. Co.*, 900 F.2d 890, 894 (6th Cir. 1990)).

[5] 532 U.S. 411, 418 (2001) ("The question presented is whether the Tribe has waived its immunity.").

[6] *Id.* at 419.

[7] *Id.*

reasoned that by virtue of these provisions, "the parties ha[d] effectively consented to confirmation of the award 'in accordance with' the Oklahoma Uniform Arbitration Act,"[8] which in turn provided that "jurisdiction to enforce the agreement vests in 'any court of competent jurisdiction of this state.'"[9] The Supreme Court concluded that "[o]n any sensible reading of the Act, the District Court of Oklahoma County, a local court of general jurisdiction, fits that statutory description."[10] The Court thus held that the tribe had waived sovereign immunity. No question of removal was raised in that case, but the decision's rationale is instructive.

As Judge Jolly's dissenting opinion points out, the pertinent question in *C & L Enterprises* for determining whether the tribe had relinquished sovereign immunity was whether the "tribe's waiver [was] 'clear.'"[11] However, in answering that question, the Supreme Court quoted from the Seventh Circuit's decision in *Sokaogon Gaming Enterprise Corp. v. Tushie-Montgomery Associates, Inc.*,[12] stating that the following passage from that decision was a "cogent observation [that] holds as well for the case we confront"[13]: "The [tribal immunity] waiver . . . is implicit rather than explicit only if a waiver of sovereign immunity, to be deemed explicit, must use the words 'sovereign immunity.' No

---

[8] *Id.*

[9] *Id.* at 419-20.

[10] *Id.* at 420.

[11] *Id.* at 418 (citing *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla.*, 498 U.S. 505, 509 (1991)).

[12] 86 F.3d 656 (7th Cir. 1996).

[13] *C & L Enters., Inc.*, 532 U.S. at 420.

14

case has ever held that."[14] I would apply the same reasoning regarding the right to remove under 9 U.S.C. § 205.

I would not demand that to be effective, a waiver of removal rights under 9 U.S.C. § 205 must contain the word "remove" or "removal" or a reference to the statute. Our decision in *McDermott* imposes no such requirement, and I am unaware of any decisions to so construe 9 U.S.C. § 205. In the present case, the statement in the agreements between ENSCO and the Underwriters that disputes "shall be subject to the exclusive jurisdiction of the Courts of Dallas County, Texas" is explicit or express. The use of the word "exclusive" is well-understood. It means solely in Dallas County courts or to the exclusion of other courts that may have jurisdiction.

I accordingly agree that the Underwriters waived the right to remove, and the district court's decision to remand should not be disturbed.

---

[14] *Id.* at 418 (quoting *Sokaogon*, 86 F.3d at 659-60).

E. GRADY JOLLY, Circuit Judge, dissenting:

Like Judge Owen, I believe that Judge Smith's opinion mistakenly relies upon *City of New Orleans v. Municipal Administrative Services., Inc.*, 376 F.3d 501 (5th Cir. 2004), a case which considered removal pursuant to 28 U.S.C. § 1441. The Underwriters removed this action pursuant to 9 U.S.C. § 205, and the removal right afforded therein cannot be waived by anything less than an express statement of waiver. *McDermott Int'l, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1204, 1209 (5th Cir. 1991). I disagree, however, with Judge Owen's conclusion that the exclusive jurisdiction clause at issue here constitutes an express waiver of removal rights. Purporting to apply this Court's express waiver standard, she suggests that language may be implicitly express. I respectfully dissent from the failure of both Judges Smith and Owen to apply our precedent in *McDermott*.

I.

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards provides a removal right (9 U.S.C. § 205) that is substantially broader than the one found in the general removal statute (28 U.S.C. § 1441). *See Acosta v. Master Maintenance and Const. Inc.*, 452 F.3d 373, 376-77 (5th Cir. 2006); *Beiser v. Weyler*, 284 F.3d 665, 674 (5th Cir. 2002). This low bar set by § 205 is consistent with the policy goals of the Convention. *See Scherck v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974) (noting the importance of unified standards and consistent enforcement of arbitration agreements); *McDermott*, 944 F.2d at 1209-11 (noting the importance of reciprocity).

In accord with these policy concerns and § 205's extensive grant of removal rights, a waiver of these removal rights will only be enforced if it is express and explicit. *See McDermott*, 944 F.2d at 1209-13. Judge Smith attempts to maneuver around *McDermott*, but its clearly and repeatedly stated holding is inescapable: "There are four reasons why we will give effect only to *explicit*

*waivers* of Convention Act removal rights"; "*we adopt the express waiver rule here to afford maximum protection to all those who rely on the Convention*"; "[o]ur *express waiver rule* minimizes this danger by providing a bright-line standard for determining when parties surrender the full panoply of Convention Act rights"; "[f]uture forum choice disputes in Convention cases will not languish in this court under our *bright-line express waiver rule*." *McDermott*, 944 F.2d at 1209, 1211, 1213 (emphases added). Looking to *City of New Orleans*, he ignores the important differences between § 1441 and § 205.

A majority of our panel today correctly concludes that the analysis in *City of New Orleans* is limited to general removal under § 1441. *McDermott* is binding.

## II.

With the appropriate standard established, the question remains whether the Underwriters expressly waived their right to removal. The Underwriters consented to the exclusive jurisdiction of the Courts of Dallas County. One can *infer* from this that the Underwriters have waived their right to remove to federal court. Under a normal contract analysis, we would give effect to this waiver. But under the express waiver rule, an inferred waiver is not sufficient.

The tribal immunity cases Judge Owen relies on are not substantially relevant in the Convention Act context.[1] The policy concerns underlying tribal immunity favor waiver of immunity. *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs.*, 86 F.3d 656, 659-60 (7th Cir. 1996). The policy concerns underlying the Convention Act, however, *disfavor* waiver of removal rights.

Judge Reavley, in *McDermott*, noted that under the "bright-line express waiver rule," Convention Act cases would no longer be bogged down by time-consuming forum-choice disputes. *McDermott*, 944 F.2d at 1213. Judge

---

[1] In *C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, the Supreme Court applied a "clear" waiver standard. 532 U.S. 411, 417 (2001).

Reavley's hopes and the bright-line ruled he espoused have been dimmed by the holding of the majority.

## III.

For the reasons stated above, I would not remand this case to state court. Accordingly, I respectfully dissent.