

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-26-2001

# Berckeley Inv Grp v. Colkitt

Precedential or Non-Precedential:

Docket 00-3433

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Berckeley Inv Grp v. Colkitt" (2001). *2001 Decisions.* Paper 167.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/167

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 26, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-3433

BERCKELEY INVESTMENT GROUP, LTD.

v.

DOUGLAS COLKITT; SHORELINE PACIFIC
INSTITUTIONAL FINANCE, THE INSTITUTIONAL DIVISION
OF FINANCE WEST GROUP; NATIONAL MEDICAL
FINANCIAL SERVICES CORPORATION

Douglas Colkitt,

Appellant

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 97-CV-1242)
District Judge: Honorable James F. McClure, Jr.

Argued: December 12, 2000

Before: SCIRICA, AMBRO, Circuit Judges, and
POLLAK, District Judge.**

(Filed: July 26, 2001)

_____

** Honorable Louis H. Pollak, Senior United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

James P. Kimmel, Jr., Esq. (Argued)
Peter Konolige, Esq.
Marcy L. Colkitt & Associates
983 Old Eagle School Road
The Woods, Suite 618
Wayne, PA 19087

 Counsel for Appellant

Mitchell R. Katz, Esq. (Argued)
Jay Starkman, Esq.
Joel Magolnick, Esq.
Moscowitz, Starkman & Magolnick
Bank of America Tower, 37th Floor
100 Southeast 2nd Street
Miami, FL 33131

Luis E. Delgado, Esq.
Homer, Bonner & Delgado
Bank of America Tower,
 Suite 3400
100 Southeast 2nd Street
Miami, FL 33131

 Counsel for Appellee Berckeley
Investment Group, Ltd.

Michael J. Lawson, Esq. (Argued)
Lisa M. Carvalho, Esq.
Steefel, Levitt & Weiss, P.C.
One Embarcadero Center, 30th Floor
San Francisco, CA 94111

James J. Kutz, Esq.
Duane, Morris & Heckscher
305 North Front Street
P.O. Box 1003, 5th Floor
Harrisburg, PA 17108-1003

 Counsel for Appellee Shoreline
Pacific Institutional Finance, The
Institutional Division of the
Financial West Group

2

OPINION OF THE COURT

AMBRO, Circuit Judge:

Defendant-Appellant Douglas Colkitt appeals from the District Court's award of summary judgment in favor of the Plaintiff-Appellee Berckeley Investment Group, Ltd. ("Berckeley"), and the denial of his own cross-motion for summary judgment. Berckeley's claims against Colkitt are for breach of contract -- more particularly, Colkitt's refusal to convert debentures held by Berckeley into unregistered shares of National Medical Financial Services Corp. ("National Medical"), as required by the Offshore Convertible Securities Purchase Agreement (the "Agreement") the two entered into in 1996. Colkitt has interposed various defenses, including the allegation that Berckeley violated several registration provisions of the securities laws of the United States, thereby voiding his obligations to convert the debentures under the Agreement.

Berckeley's complaint makes additional claims against the broker of the transaction -- Shoreline Pacific Institutional Finance, the Institutional Division of the Financial West Group ("Shoreline") -- claiming breaches of contract and fiduciary duty. Shoreline, in turn, has made cross-claims against Colkitt for breach of contract and contractual indemnification. The claims by and against Shoreline remain unresolved.

While we recognize the benefits of the expeditious resolution of the parties' conflict, we nevertheless find that this Court, in the absence of the District Court's certification of its order as a partial final judgment pursuant to Federal Rule of Civil Procedure 54(b), does not have jurisdiction to entertain this appeal in light of the pending claims against Shoreline. We therefore refuse jurisdiction under 28 U.S.C. S 1291 and remand to the District Court for consideration of those factors relevant to such certification and, if it deems necessary, compliance with Rule 54(b).

3

I. FACTS AND PROCEDURAL H ISTORY

On May 30, 1996, Colkitt and Berckeley entered into an Agreement by which Berckeley purchased forty convertible debentures issued by Colkitt at a price of $50,000 each, for a total of $2,000,000. The debentures had a term of one year and paid interest of 6%, due quarterly. The debentures further provided that Berckeley had the unilateral option to demand that Colkitt convert each debenture into unregistered shares of National Medical, a company led by Colkitt as the Chairman of its Board of Directors and which traded on the Nasdaq Stock Exchange. The number of shares converted depended on the price of National Medical stock and included a 17% discount from the market price. The discount was, in part, because the National Medical shares held by Colkitt for the transaction were not registered with the Securities and Exchange Commission, as would be required for sales of those shares within the United States by Section 5 of the Securities Act of 1933. 15 U.S.C. S 77(e). The Agreement between Colkitt and Berckeley was brokered by Shoreline and it was through Shoreline that the $2,000,000 eventually passed to Colkitt on May 31, 1996.

Berckeley made its first demands for conversion of the debentures in September 1996, after the expiration of a 100-day waiting period required by the Agreement. Colkitt initially refused to convert the debentures, but eventually acceded to the conversion of 18,320 shares, a small fraction of the requested share conversions, in November of 1996. No other shares were converted despite Berckeley's demands. Colkitt also refused to make interest payments on the debentures.

The battle of claims then began. Berckeley filed suit against Colkitt, National Medical and Shoreline in the United States District Court for the Middle District of Pennsylvania on August 13, 1997.[1] The complaint alleged breaches of contract by both Colkitt and National Medical and breaches of both fiduciary duty and contract by

_____

1. The District Court properly took original jurisdiction of this matter pursuant to 28 U.S.C. S 1332(a), as there is complete diversity among the parties and the amount in controversy exceeds $75,000.

4

Shoreline. National Medical was eventually dismissed from the action and the claims against it are immaterial to this appeal. Colkitt filed his answer, affirmative defenses and counterclaims on October 17. Shoreline filed a cross-claim against Colkitt on December 10. The District Court dismissed all of Colkitt's counterclaims on April 1, 1998, but Colkitt reasserted those counterclaims not dismissed with prejudice in an amended counterclaim complaint, filed April 21, 1998. Berckeley filed an answer and affirmative defenses to Colkitt's claims on May 13, 1998 and presented the first of its motions for summary judgment in October of that year.

As discovery progressed, Colkitt filed another set of counterclaims and affirmative defenses, together with a motion for summary judgment, in April 1999. In response, Berckeley filed a second motion for summary judgment in July 1999.

On December 7, 1999, the District Court granted Berckeley's motion for summary judgment and denied Colkitt's, but left open the question of damages. In its December 7 Order, the Court noted that "the following claims/issues remain for trial: (1) the amount of Berckeley's claim for damages due to the breach of contract by Colkitt (Count I of the complaint); (2) Berckeley's claims against Shoreline Pacific for breach of contract and breach of fiduciary duty (Counts II and III of the complaint); and (3) Shoreline Pacific's cross-claims against Colkitt for breach of contract and contractual indemnity." Recognizing the pendency of these claims, the Court sought submissions from the parties about how to proceed with trial and expressly stated that the "entry of final judgment is deferred pending disposition of the remaining claims."

Colkitt's response to the District Court represented that he "will shortly file a motion under Rule 54(b) and/or 28 U.S.C. S 1292(b) to immediately appeal the Court's decision regarding the grant of summary judgment on the lack of scienter." Berckeley filed a response outlining its recommended procedure, including either dispositive motions or a trial on damages, the entry of final judgment and a one-year stay of the proceedings involving Shoreline. The stay was recommended to permit Berckeley the

5

opportunity to collect its damages from Colkitt, thereby mitigating its claims against Shoreline and possibly limiting Shoreline's indemnification claims against Colkitt. In response to these submissions, the District Court entered its January 12, 2000 Order, which accepted Berckeley's proposed procedures. As to Colkitt's submission, the Court stated: "Colkitt indicates that he intends to file a motion for leave to take an interlocutory appeal. While we do not prejudge any such motion, we do not believe that the record reflects the need for an interlocutory appeal."

Following the receipt of motions for final judgment and a stay, the District Court entered its March 30, 2000 Order, awarding damages to Berckeley in the amount of $2,611,075.52. With respect to Colkitt's threatened interlocutory appeal, the Court stated the following: "Colkitt indicated that he intends to file a motion for leave to take an interlocutory appeal. No such motion was filed. Instead, Colkitt has filed a motion `for revision of and/or relief from' our orders of December 7, 1999 and January 12, 2000. The motion in effect is a motion for reconsideration." In fact, Colkitt's motion for reconsideration did cite Rule 54(b), but neither the text of the motion nor its supporting memorandum contained any discussion of Rule 54(b) or partial final judgment.

The Court denied the motion for reconsideration and granted a one-year stay of the proceedings involving Shoreline, the stated purpose of which was "to allow Berckeley to obtain a final judgment against Colkitt and begin collection efforts, which would reduce or eliminate Shoreline's potential liability to Berckeley." The Order went on to grant Berckeley's motion for "the entry of final judgment" and "directed" the clerk "to enter final judgment in favor of Berckeley and against Colkitt . . . ." The Court also directed the clerk "to close the file administratively during the period of the stay" and stated that"[i]f no motion to lift the stay is filed before it expires, the matter will be deemed resolved and the case shall be closed."

Colkitt filed a notice of appeal on April 25, 2000. His appeal was taken from "the Order and Final Judgment entered by the district court on March 30, 2000 and from the underlying orders of December 7, 1999 and January

6

12, 2000." In a surreal (though presumably strategic) change of course, Colkitt now claims that we do not have jurisdiction because the judgment of the District Court was not final for purposes of execution or appeal.[2]

## II. DISCUSSION OF LAW

This Court's appellate jurisdiction is conferred and limited by Congress's grant of authority. See Sheldon v. Sill, 49 U.S. (8 How.) 441, 449 (1850) ("Courts created by statute can have no jurisdiction but such as the statute confers."). In this case, appellate jurisdiction is claimed pursuant to 28 U.S.C. S 1291,[3] which states that the "courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction from appeals from all final decisions of the district courts of the United States . . . ." The clause "final decision" has been interpreted to require that all proceedings and claims have been terminated in the District Court. "Ordinarily, an order which terminates fewer than all claims, or claims against fewer than all parties, does not constitute a `final' order for purposes of appeal under 28 U.S.C. S 1291." Carter v. City of Philadelphia, 181 F.3d 339, 343 (3d Cir.), cert. denied sub nom., Roe v. Carter, 528 U.S. 1005 (1999); see also Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 431-32 n.3

_____

2. Even had Colkitt not reversed course and argued that our jurisdiction was lacking, we nevertheless would be required to examine, sua sponte, the basis for our jurisdiction. See Ortiz v. Dodge, 126 F.3d 545, 547 (3d Cir. 1997); American Motorists Ins. Co. v. Levolor Lorentzen, Inc., 879 F.2d 1165, 1169 (3d Cir. 1989).

3. Though Colkitt threatened to take an interlocutory appeal pursuant to 28 U.S.C. S 1292(b) in his response to the District Court's December 7, 1999 Order, none of the parties now attempt to justify our jurisdiction under that provision. This is perhaps because an application for interlocutory appeal must be presented to this Court within ten days of the District Court's certification of the question of law. Braden v. University of Pittsburgh, 552 F.2d 948, 950-51 (3d Cir. 1977) (en banc) ("It is well-settled that the neglect of a party to petition for leave to appeal within ten days of the entry of the certification order deprives an appellate court of jurisdiction to consider the petition, and that [Federal Rule of Appellate Procedure] 26(b) forbids appellate courts to enlarge the time for filing such a petition." (citation omitted)).

(1956) ("In cases involving multiple parties where the alleged liability was joint, a judgment was not appealable unless it terminated the action as to all the defendants.") (citing Hohorst v. Hamburg-American Packet Co. , 148 U.S. 262, 264 (1893)).

Recognizing, however, that "sound judicial administration" could benefit from relaxing the"final decision" rule, especially in complex cases involving multiple litigants and claims, Federal Rule of Civil Procedure 54(b) was first promulgated in 1939 to permit the district court to enter "partial" final judgments of less than all of the claims. Mackey, 351 U.S. at 433-34. Rule 54(b) now states the following:

> (b) Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed. R. Civ. P. 54(b) (emphasis added). Put more succinctly by the Supreme Court, "[i]f the District Court certifies a final order on a claim which arises out of the same transaction and occurrence as pending claims, and the Court of Appeals is satisfied that there has been no abuse of discretion, the order is appealable." Cold Metal Process Co. v. United Eng'g & Foundry Co., 351 U.S. 445, 452 (1956).4

_____

4. While we will typically afford discretion to the District Court's determination that there is no just cause for delay, see Gerardi v. Pelullo,

8

Berckeley and Shoreline argue on appeal that the District Court's Order of March 30, 2000 met the requirements of Rule 54(b) and thus we have jurisdiction over this appeal. Their argument, however, is weakened by the absence of both "an express determination that there is no just reason for delay," as literally required by the text of Rule 54(b), and a clear indication from the District Court's rulings that it was considering all the questions relevant to a Rule 54(b) determination.5

Taking first the requirement of an express determination that there is no just reason for delay, nowhere in the District Court's orders resolving this case did it use the words "no just cause for delay" or make any statement of an indisputably similar effect. Berckeley and Shoreline maintain that we can imply that such a statement was the District Court's intent from similar language it used to praise expedition in the resolution of the proceedings. Specifically, Berckeley points to language in the Court's January 12, 2000 Order that acceptance of Berckeley's proposal to allow it to seek collection after the entry of summary judgment "would not delay an appeal by more than one or two months" and that the "matter is close to resolution in this court, and may reach resolution if the

_____

16 F.3d 1363, 1368 (3d Cir. 1994); Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 10 (1980), we are presented here with what is solely a question of law entitled to plenary review –- our interpretation of the requirements of Rule 54(b). See Griffiths v. CIGNA Corp., 988 F.2d 457, 462 (3d Cir.) (noting that though a motion for a new trial is ordinarily reviewed for an abuse of discretion, where the outcome of that motion relies on "legal precepts," the court would engage in plenary review), cert.
denied, 510 U.S. 865 (1993), overruled on other grounds, Miller v. CIGNA Corp., 47 F.3d 586 (3d Cir. 1995).

5. The parties do not contest that the District Court ordered the entry of final judgment as to at least one or more, but less than all, claims or parties. See Waldorf v. Shuta, 142 F.3d 601, 611 (3d Cir. 1998) ("[a] final
judgment is `an ultimate disposition of an individual claim entered in the course of a multiple claims action' ") (citing Mackey, 351 U.S. at 436). While the Court's orders resolve Berckeley's breach of contract claim against Colkitt, see Gerardi, 16 F.3d at 1370, the Court has not terminated the claims of all parties, and thus it has not entered an appealable final order under 28 U.S.C. S 1291. See Carter, 181 F.3d at 343.

9

suggestion of Berckeley is followed." Neither of these statements, however, contains "an express determination that there is no just reason for delay," as required by Rule 54(b). In fact, neither of these statements even implies that the District Court was considering the delay caused by an immediate appeal of summary judgment, as the Court also said in the same paragraph that "we do not prejudge any such motion" by Colkitt for an interlocutory appeal. We decline to adopt the position that general references to the necessity of expedition can substitute for the "express" determination required by the Rule. See Bhatla v. U.S. Capital Corp., 990 F.2d 780, 786 n.6 (3d Cir. 1993).

Recognizing the absence of any express statement of"no just cause for delay," both Berckeley and Shoreline argue that such an "express" statement is not of talismanic importance in determining whether this Court has jurisdiction after our holding in Carter v. City of Philadelphia, 181 F.3d 339 (3d Cir. 1999). Their reliance on Carter for the proposition that this Court no longer requires a district court to make the express determination of Rule 54(b) is misplaced. In Carter, we were asked to consider whether Rule 54(b) required that district courts explain their consideration of factors in support of the determination that there was no just cause for delay. Id. at 344-45. We had previously held that a "proper exercise of discretion under Rule 54(b) requires the district court to do more than just recite the 54(b) formula of `no just reason for delay.' The court should clearly articulate the reasons and factors underlying its decision to grant 54(b) certification." Allis-Chalmers Corp. v. Philadelphia Elec. Co., 521 F.2d 360, 364 (3d Cir. 1975); see also Waldorf v. Shuta, 142 F.3d 601, 611 (3d Cir. 1998).

Carter was concerned with whether the court's failure to articulate the factors discussed in Allis-Chalmers divested us of appellate jurisdiction, not whether the express determination of "no just cause for delay" was required for certification under Rule 54(b). Indeed, we noted in Carter that the district court in that case had expressly stated both that there was no just cause for delay and that it was entering a final judgment. Carter, 181 F.3d at 343 n.8. We further stated that "the requirements of Rule 54(b) are

10

clearly met," id. at 346, and we went on to hold that Allis-
Chalmers's requirement of a statement of reasons for a Rule
54(b) entry of final judgment "stands not as a jurisdictional
prerequisite but as a prophylactic means of enabling the
appellate court to ensure that immediate appeal will
advance the purpose of the rule." Id. at 345.6 Given the
clarity of our holding in Carter, Berckeley's and Shoreline's
argument that we intended to hold that an express
determination of `no just cause for delay' was not a
jurisdictional prerequisite is unpersuasive.

Indeed, only one court has held that a district court's
failure to state expressly that there was "no just cause for
delay" permits the exercise of jurisdiction by the court of
appeals. In Kelly v. Lee's Old Fashioned Hamburgers, Inc.,
908 F.2d 1218 (5th Cir. 1990), the Fifth Circuit, en banc,
held that "[i]f the language in the order appealed from,
either independently or together with related portions of the
record referred to in the order, reflects the district court's
unmistakable intent to enter a partial final judgment under
Rule 54(b), nothing else is required to make the order
appealable. We do not require the judge to mechanically
recite the words `no just reason for delay.' " Id. at 1220.
Unlike Carter, the Fifth Circuit's holding in Kelly does
establish the proposition on which Berckeley and Shoreline
must rely in support of their argument that this Court has
jurisdiction.

Further examination of the district court's holding in
Kelly demonstrates that the circumstances supporting
jurisdiction in that case are not comparable to those
presented here, and therefore we do not address whether
this Court should adopt the Fifth Circuit's holding in Kelly.7
(Text continued on page 13)
_____

6. In doing so, we concurred with other courts of appeals that have
considered the question. See Ebrahimi v. City of Huntsville Bd. of Educ.,
114 F.3d 162, 166 (11th Cir. 1997); Feinstein v. Resolution Trust Corp.,
942 F.2d 34, 39-40 (1st Cir. 1991); Fuller v. M.G. Jewelry, 950 F.2d
1437, 1441 (9th Cir. 1991); Pension Benefit Guar. Corp. v. LTV Corp., 875
F.2d 1008, 1015 (2d Cir. 1989), rev'd on other grounds, 496 U.S. 633
(1990); Bank of Lincolnwood v. Federal Leasing, Inc., 622 F.2d 944, 948-
49 (7th Cir. 1980).

7. Indeed, the "touch the bases" approach taken by the Kelly dissenters,
see Kelly, 908 F.2d at 1223, has merit both because it is consistent with

11

the plain meaning of Rule 54(b) and because it would result in a predictable process by which appeals are taken under that rule. See also Taylor v. FDIC, 132 F.3d 753, 760 (D.C. Cir. 1997). That argument proceeds from the recognition that Rule 54(b) is a simple rule. Its substance is comprised of two sentences. The first sentence details the mechanism by which a district court may enter partial final summary judgment. A court must make both an "express determination that there is no just reason for delay" and an "express direction for the entry of judgment." Fed. R. Civ. P. 54(b). The word "express" separately modifies both the determination of no just cause for delay and the direction for the entry of judgment. Black's Law Dictionary defines "express" as "[c]lear; definite; explicit; plain; direct; unmistakable; not dubious or ambiguous." Black's Law Dictionary 580 (6th ed. 1990); see also Kelly, 908 F.2d at 1222 (referring to the substantially similar definition in Webster's Third New International Dictionary). "Under this definition, `express determination that there is no just reason for delay' can mean only one thing: The judge's very words must state specifically that he or she has decided that there is no just reason for delay." Kelly, 908 F.2d at 1222. Thus, the argument proceeds, it is self-evident that the first sentence of Rule 54(b) requires an explicit manifestation that the district
court has determined there is "no just cause for delay" and directing the entry of final judgment.

The second sentence explains the effect of a district court's failure to comply with the mechanism detailed in the first. It begins by stating "[i]n
the absence of such determination and direction," thereby echoing the first sentence's requirements of both an "express determination" that there is "no just cause for delay" and "express direction" for entry of judgment. The second sentence goes on to state broadly that any court order that does not comply with both of these requirements "shall not terminate the action as to any claims or parties" and the order shall be subject to later revision. As the dissent in Kelly notes, the second sentence's prohibition applies to all orders, "however designated," thereby limiting an appellate court's ability to find alternative indicia of
finality where there has not been strict compliance with the rule. "The inclusion of the `however designated' proscription serves to underscore the importance of the `express determination' requirement in the [present Rule]. The drafters apparently viewed this requirement as absolute -- one that could not be circumvented by use of a mere title." Kelly, 908 F.2d at 1226. Furthermore, while the first sentence permits the district court some discretion by stating it "may" enter partial final judgment where the two requirements are met, the second sentence's use of the word "shall" arguably allows no discretion for an appellate court to take

12

The district court in Kelly was undoubtedly passing on the propriety of a partial final summary judgment under Rule 54(b). The district judge solicited a judgment form pursuant to Rule 54(b) from the dismissed defendant, the signed judgment was captioned "F.R.C.P. 54(b) JUDGMENT," and the order directed "that there be final judgment entered pursuant to Federal Rule of Civil Procedure 54(b) . . . ." Id. at 1219. There were thus three indications that the district court, though it did not state "no just cause for delay," intended to enter a judgment under Rule 54(b). The clarity of the district court's ruling was a necessary condition of the Fifth Circuit's holding that the absence of an express determination of "no just cause for delay" would not defeat its jurisdiction. After noting the district court's three references to its intent to enter judgment under Rule 54(b), the Fifth Circuit stated that "[t]he only question, then, is whether this language reflects with unmistakable clarity the district judge's intent to enter a partial final summary judgment under Rule 54(b). We have no doubt that it does." Id. at 1221.

But no indicia of the District Court's intent to enter judgment under Rule 54(b) is evident from its rulings in this case. The District Court's order does not cite Rule 54(b) or discuss its application, but only states that it is granting "final judgment" on the claims between Berckeley and

_____

jurisdiction pursuant to 28 U.S.C. S 1291 where those requirements are deficient. See Miller v. French, 120 S. Ct. 2246, 2253 (2000) (discussing the difference between "shall" and "may" in statutory interpretation).

The Supreme Court and this Court have repeatedly held that the Federal Rules of Civil Procedure, like any other statute, should be given their plain meaning. Business Guides, Inc. v. Chromatic Communications Enters., Inc., 498 U.S. 533, 540 (1991); Pavelic & LeFlore v. Marvel Entertainment Group, 493 U.S. 120, 123 (1989); Walker v. Armco Steel Corp., 446 U.S. 740, 750 n.9 (1980); United States v. Nahodil, 36 F.3d 323, 328 (3d Cir. 1994). "As with a statute, our inquiry is complete if we find the text of the Rule to be clear and unambiguous." Business Guides, Inc., 498 U.S. at 540-41.

The manner in which we dispose of this case does not require us to address, head on, the issue presented in Kelly . Thus, we leave for another day deciding whether the words "no just cause for delay" are required in haec verba to confer appellate jurisdiction under Rule 54(b).

13

Colkitt, while holding the remaining claims by and against Shoreline in abeyance during a one-year stay. In light of the well-known rule that a judgment is not appealable unless it terminates all claims, see, e.g. Carter, 181 F.3d at 343, we do not take the invocation of the words "final judgment" to indicate that the Court intended to grant an appealable partial final judgment under Rule 54(b). The sole reference to the immediate appeal of its entry of summary judgment is the Court's statement that "we do not prejudge any such motion" by Colkitt for an interlocutory appeal. Not only does this statement disclaim that it is making any ruling at all, but it appears to refer to a hypothetical motion pertaining to the interlocutory appeal provisions of 28 U.S.C. S 1292.

The only reference to the application of Rule 54(b) in this case is a lone citation to "Fed. R. Civ. P. 54 and 56" contained in the motion for the entry of final judgment filed by Berckeley and repeated once in its Memorandum of Law, and the similarly summary citation in Colkitt's Motion for Reconsideration. Given the generality of these references and the paucity of any further discussion of the requirements of Rule 54(b), we are not persuaded that the District Court intended to enter partial final judgment in compliance with the dictates of that Rule. The facts of this case are in stark contrast to those of Kelly and we are unconvinced that the District Court's "language reflects with unmistakable clarity the district judge's intent to enter a partial final summary judgment under Rule 54(b)." Kelly, 908 F.2d at 1221.

Even the Fifth Circuit has recognized that the absence of an express determination of no just cause for delay cannot be excused where it is unclear whether the district court intended to enter a partial final judgment under Rule 54(b). See Briargrove Shopping Ctr. Joint Venture v. Pilgrim Enters., Inc., 170 F.3d 536 (5th Cir. 1999). Discussing its holding in Kelly, the court concluded that, "[t]he intent must be unmistakable; the intent must appear from the order or from documents referenced in the order; we can look nowhere else to find such intent nor can we speculate on the thought process of the district judge." Id. at 539.

14

Indeed, the facts in Briargrove substantially mirror those presented here. "Unlike the facts in Kelly , the district court nowhere mentions Rule 54(b). And in further contrast with the Kelly facts, neither of the parties in the instant case submitted a motion mentioning Rule 54(b) to the district court." Id. at 539-40 (citations omitted). While the failure to mention Rule 54(b) will not, by itself, defeat jurisdiction under that section, United States v. Ettrick Wood Prods., Inc., 916 F.2d 1211, 1217 (7th Cir. 1990), where there is a concurrent failure to make an express determination of no just cause for delay, we cannot reasonably conclude that the District Court intended to enter a partial final judgment pursuant to that Rule.

We are buttressed in this conclusion by the absence of any indication, in a colloquy with counsel or written document (order, memorandum or opinion), that the District Court was considering any of those factors relevant to Rule 54(b), particularly those factors related to whether there was a justifiable cause for delay. See Briargrove, 170 F.3d at 540 ("the district court in this case did not issue any orders or memoranda discussing the substantive concerns surrounding a Rule 54(b) certification"). We announced an illustrative list of Rule 54(b) factors in Allis-Chalmers Corp., including:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. Depending upon the facts of the particular case, all or some of the above factors may bear upon the propriety of the trial court's discretion in certifying a judgment as final under Rule 54(b).

Allis-Chalmers Corp., 521 F.2d at 364 (citations omitted). While the consideration of these factors is not a

15

jurisdictional prerequisite, see Carter, 181 F.3d at 345, this case illustrates why explaining the relevant factors in determining that there is no just cause for delay has the importance we attributed to it in Allis-Chalmers . Without the District Court's consideration of the relevant factors, we find ourselves as frustrated as Berckeley and Shoreline, for we, as much as they, want to reach the merits of this appeal by Colkitt, who now finds it to his strategic advantage to undermine his own appeal by delaying any decision on the merits. But we are stymied because we are unable even to assess whether the District Court evaluated those factors that might show no just cause for delay.

As an example, were we to assume the District Court intended to enter judgment under Rule 54(b), we would find little on the current record that would allow us to review whether the District Court properly made that judgment. While there was some general discussion of the relationship between the adjudicated claims of Berckeley and Colkitt and the unadjudicated claims involving Shoreline, and the District Court did comment on the effect of partial final judgment on the remaining claims, none of those discussions was in the context of the application of Rule 54(b). Furthermore, there was no analysis of the particular factors relating to whether just cause for delay existed, including "whether the claims under review [are] separable from the others remaining to be adjudicated and whether the nature of the claims already determined [is] such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." Carter, 181 F.3d at 346 (citing Curtiss-Wright Corp., 446 U.S. at 8). Indeed, the Sixth Circuit has held that, in the absence of a statement of reasons explaining the entry of partial final judgments under Rule 54(b), it will not accord deference to the district court's determination of the issue. Corrosioneering, Inc. v. Thyssen Envtl. Sys., Inc. , 807 F.2d 1279, 1282-83 (6th Cir. 1986). We will similarly not accord deference to the District Court where it has not announced that there is "no just cause for delay" and did not consider those factors relevant to this inquiry. Indeed, it can hardly be said that we must accord deference to the District Court, given our doubt that the Court ever intended to enter a partial final judgment under Rule 54(b).

16

Thus, we abstain from considering the merits of the Fifth Circuit's position in Kelly until an analogous case, one in which there is an unmistakable intent to enter judgment under Rule 54(b) but no express determination of"no just cause for delay," presents itself. For purposes of Colkitt's appeal, we cannot say that the District Court's orders show any such unmistakable intent. We therefore find the appeal premature until the District Court enters final judgment as to all parties and claims or chooses to make an express determination that there is no just cause for delay of the appeal of the entry of summary judgment. We leave this determination in the capable hands of the District Court, "the one most likely to be familiar with the case and with any justifiable reasons for delay." Bank of Lincolnwood v. Federal Leasing, Inc., 622 F.2d 944, 948 (7th Cir. 1980) (citing Mackey, 351 U.S. at 437).

* * * * *

For the reasons noted above, we dismiss this appeal for lack of jurisdiction and remand to the District Court for further proceedings.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

17