# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 9, 2008

Charles R. Fulbruge III
Clerk

No. 07-31035
Summary Calendar

SOUTHWEST LOUISIANA HEALTHCARE SYSTEM, INC; SOUTHWEST
LOUISIANA HOSPITAL ASSOCIATION, doing business as Lake Charles
Memorial Hospital

                                 Plaintiffs-Appellants

v.

ARGIL TARPON MANAGEMENT, LLC; RANDY STARKWEATHER; JIM
O'KEEFE; CAMBIO HEALTH SOLUTIONS, LLC

                                 Defendants-Appellees

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:05-CV-1299

---

Before JOLLY, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

      Plaintiffs-Appellants appeal the district court's dismissal of a subset of their claims against Defendants-Appellees. Because the district court has not rendered a final judgment in this action, we dismiss the appeal for lack of jurisdiction.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs-Appellants Southwest Louisiana Healthcare, Inc. and Southwest Louisiana Hospital Association (collectively, "Plaintiffs") entered into a series of loan agreements and bond indentures in order to obtain financing for capital improvements to the hospital they operate. Various problems arose from these transactions, leading Plaintiffs to file suit against several defendants, including Argil Tarpon Management, LLC ("Argil"), Argil members Randy Starkweather ("Starkweather") and Jim O'Keefe ("O'Keefe"), and Cambio Health Solutions, LLC ("Cambio") (collectively, "Defendants").[1] Plaintiffs brought several tort- and contract-based claims against Defendants, including fraud, conspiracy to defraud, duress, punitive damages, commercial bribery, misappropriation of trade secrets, and breach of contract.

On March 29, 2007, the district court issued a Memorandum Ruling and Judgment (the "March Ruling") dismissing with prejudice the fraud, conspiracy, punitive damages, and duress claims against Defendants, as well as the claims of commercial bribery against Argil and O'Keefe. The other claims were not affected by the March Ruling. In April 2007, Plaintiffs filed a Motion for Leave to File a Proposed Second Amended Complaint ("Motion for Leave to Amend"), seeking to add an additional defendant, add additional facts that had come to light during discovery, and supplement and restate their dismissed and non-dismissed claims in light of the March Ruling and the newly discovered evidence. At a hearing on the Motion for Leave to Amend held on June 13, 2007, the court directed Plaintiffs to file a motion to reconsider, vacate, or set aside the March Ruling ("Motion to Vacate"), which Plaintiffs did.

On October 9, 2007, the district court issued a second Memorandum Ruling and Judgment (the "October Ruling") addressing Plaintiffs' Motion to

---

[1] Plaintiffs also named several additional defendants who are not parties to this appeal..

Vacate and Motion for Leave to Amend. In considering whether to allow Plaintiffs to reinstate their previously dismissed claims, the district court stated that the March Ruling had been a final judgment. It then evaluated whether Plaintiffs had satisfied the Rule 60(b)(2) standard for granting relief from a final judgment on the basis of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." FED. R. CIV. P. 60(b)(2). The district court determined that the new evidence submitted by Plaintiffs regarding the previously dismissed claims was cumulative and shed no new light on the claims. It therefore denied the Motion to Vacate in full and denied the Motion for Leave to Amend in part, refusing to allow Plaintiffs to reinstate the previously dismissed claims. However, it granted the Motion for Leave to Amend in part, allowing Plaintiffs to amend their complaint as to their other claims.

On appeal, Plaintiffs maintain that the district court mischaracterized its March Ruling as a final judgment and therefore erred in applying the Rule 60(b) standard to evaluate Plaintiffs' Motion to Vacate. Plaintiffs acknowledge that if the district court has not yet entered a final judgment in their case, their appeal is premature. However, they filed this appeal to preserve their rights against any claims of res judicata or waiver.

## II. DISCUSSION

We must first determine whether we have jurisdiction over this appeal. We have jurisdiction over "final decisions of the district courts of the United States." 28 U.S.C. § 1291. Generally, a judgment or order is final and appealable when it resolves all claims against all parties and "leaves nothing for the court to do but execute the judgment." Askanase v. Livingwell, Inc., 981 F.2d 807, 810 (5th Cir. 1993) (internal quotation marks and citations omitted). It is undisputed that the district court has entered no judgment or order that resolved all claims against all parties in this case. However, Federal Rule of

Civil Procedure 54(b) creates an exception to this rule for certain partial final judgments: "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Thus, we must determine whether the district court's March Ruling dismissing some of Plaintiffs' claims was a partial final judgment under Rule 54(b) that is subject to immediate appeal.[2]

A district judge need not "mechanically recite the words 'no just reason for delay'" to satisfy Rule 54(b). Kelly v. Lee's Old Fashioned Hamburgers, Inc., 908 F.2d 1218, 1220 (5th Cir. 1990) (en banc). Rather, "[i]f the language in the order appealed from, either independently or together with related portions of the record referred to in the order, reflects the district court's unmistakable intent to enter a partial final judgment under Rule 54(b), nothing else is required to make the order appealable." Id. However, "[t]he intent must be unmistakable; the intent must appear from the order or from documents referenced in the order; we look nowhere else to find such intent, nor can we speculate on the thought process of the district judge." Briargrove Shopping Ctr. Joint Venture v. Pilgrim Enters., Inc., 170 F.3d 536, 539 (5th Cir. 1999). Moreover, a district court's labeling of its order as a "final judgment," standing alone, is not sufficient to show the district court's intent to make the judgment immediately appealable under Rule 54(b). Id. at 540.

Here, the March Ruling itself contains no indication that it was intended to be an immediately appealable final judgment under Rule 54(b). It does not mention Rule 54(b), nor does it suggest that there is no just reason for delay of an appeal. No documents referenced in the order indicate that it was intended to be a final judgment. Moreover, at a hearing held in June, the district court

---

[2] None of the parties contend that the October Ruling denying Plaintiffs' Motion to Vacate and Motion for Leave to Amend was a final judgment, nor did the district court characterize it as such.

indicated that the March Ruling was not intended to be an immediately appealable final judgment under Rule 54(b):

> I didn't do the 54(b) on purpose because I felt like that it was the correct ruling under the allegations as to the parties that was involved at that time, and I did not do it purposefully because I didn't want to—that would have necessitated an appeal and I would not have wanted to try the case in a piece-meal fashion. We had a trial fixing in January and I didn't want to have to upset that. I wanted to go on and try the case and dispose of it. Maybe perhaps I should have done it, but that would have been the result. We would have been waiting on the Court of Appeals to do something . . . the January trial fixing is going to be upset.

(Emphasis added). In contrast, in its October Ruling, the district court stated that the March Ruling was a final judgment, pointing out that "Rule 54 allows the Court to enter a 'final judgment as to one or more but fewer than all of the claims or parties.'" However, the district court failed to cite the remainder of Rule 54(b), which states that a partial final judgment is allowed in such cases "only if the court expressly determines that there is no just reason for delay." FED. R. CIV. P. 54(b). Neither the court's March Ruling nor its October Ruling show that the district court determined that there was no just reason for delay.

In light of this record, we do not find "unmistakable intent" by the district court to enter a partial final judgment under Rule 54(b).[3] The March Ruling does not in any way indicate that it is a final judgment, does not indicate that there was no just reason for delay, and does not mention Rule 54(b). Indeed, the district court's statements from the bench show that the district court did not intend the March Ruling to be immediately appealable. The district court's attempt, in the October Ruling, to characterize the March Ruling as a final judgment does not transform it into a final judgment. See Briargrove, 170 F.3d

---

[3] Because the March Ruling was not a final judgment, the district court may have erred in applying the standard of Rule 60(b)(2), which governs final judgments, to its evaluation of Plaintiffs' Motion to Vacate and Motion for Leave to Amend. However, this issue is not properly before us at this time because we lack jurisdiction.

at 540 (holding that a district court's labeling of its order as a "final judgment" did not suffice to make the order appealable under Rule 54(b) where the district court did not mention Rule 54(b) and where there was no evidence that the district court had considered the substantive concerns surrounding the issuance of a Rule 54(b) judgment). Therefore, the district court has not entered a final judgment, we lack jurisdiction, and we must DISMISS this appeal.

DISMISSED.